IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | * * * | |
| Plaintiff, | * * | |
| v. | * * | CV 109-148 |
| ANGELA D. CROUCH, JERRY E. CROUCH, SUSAN CROUCH, as Mother and Natural Guardian of HANNAH R. CROUCH, Minor, SUNTRUST BANK, and THE ESTATE OF JIMMY EDWIN CROUCH, | * * * * * * * * | |
| Defendants. | * | |

**ORDER**

On October 27, 2010, this Court held a hearing in this interpleader action on all pending motions. Several days after the hearing, Defendants Hannah R. Crouch, SunTrust Bank, and the Estate of Jimmy Edwin Crouch, together filed a motion for default judgment and several supplements to previously filed motions.

At this time, all pending motions have been thoroughly considered—the Court has heard the parties' arguments, read the relevant briefs, and reviewed the applicable law. Upon this due consideration, the Court finds as follows.

# I. BACKGROUND

## A. Allegations in the Complaint

This case arises from the death of Jimmy Edwin Crouch ("Jimmy") on January 16, 2007. Jimmy was insured under an individual life insurance policy with a face value of $100,000.00. As a result of Jimmy's death, a death benefit became due and payable to the policy's beneficiaries.

On April 26, 2007, SunTrust Bank ("SunTrust") made a claim for the death benefit. On or about June 27, 2007, Prudential received from SunTrust a copy of a commercial note dated April 7, 2006. In the commercial note, Augusta Machine and Welding, Inc.,[1] pursuant to an assignment allegedly executed by the insured and signed by the insured's children, Hannah R. Crouch ("Hannah"), Angela D. Crouch ("Angela"), and Jerry E. Crouch ("Jerry"), purported to assign to SunTrust Jimmy's entire life insurance policy as collateral for a $329,614.50 term loan. Prior to the submission of SunTrust's claim, Prudential had no records that named SunTrust as an absolute assignee of the policy. Rather, Prudential had on file a "Request to Change Beneficiary Form," dated March 20, 2006, in which Jimmy had designated his children, Hannah, Angela, and Jerry, the primary beneficiaries of the policy.

---

[1] Jimmy was the majority shareholder and president of Augusta Machine and Welding, Inc. at the time the note was allegedly executed.

2

B. **Procedural History**

   1. *Filing of Complaint and Entry of Default as to Jerry and Angela Crouch*

Unable to determine who was entitled to the death benefit, Prudential began this interpleader action on November 25, 2009, naming Angela, Jerry, Susan Crouch, as mother and natural guardian of Hannah,[2] SunTrust, and the Estate of Jimmy Edwin Crouch ("the Estate") as Defendants. SunTrust, Hannah, and the Estate ("Bank Defendants") timely filed answers.[3] Jerry and Angela, however, failed to submit answers within the time allotted under the Federal Rules.[4]

In light of Jerry and Angela's failure to respond, Prudential filed a motion for entry of default. A few days later, Prudential and the Bank Defendants filed a "Consent Motion to Interplead," within which the Bank Defendants expressly agreed to discharge Prudential from any liability in exchange for Prudential's agreement to deposit with the Court the sum of $134,465.85, plus claim interest. Prudential was

---

[2] At the time Prudential filed the complaint in this case, Prudential was uncertain as to whether Hannah had reached the age of majority. Attorney Joseph Neal, Hannah's trustee and legal representative, has since informed the Court that Hannah has now reached the age of majority and is making a voluntary appearance in this case in substitution for Susan Salter, formerly known as Susan Crouch, her natural mother. (Doc. no. 39, Ex. 1 at 2.) The Court shall construe these statements as a motion for substitution, which, based upon Mr. Neal's representations to the Court, will be granted.

[3] In their respective answers, Bank Defendants asserted counterclaims against Prudential for, *inter alia*, failing to deal with this matter in a timely manner.

[4] Based upon the records filed with the Court, Prudential served Jerry on January 6, 2010, and Angela waived service on January 25, 2010.

3

later allowed to deposit said sum with the Court and was formally dismissed from the case.

On June 7, 2010, the Clerk entered default against Angela and Jerry. Subsequently, Bank Defendants filed a "motion for an order to disburse funds," and, on June 21, 2010, Prudential, despite having been dismissed from the case, filed a motion for default judgment.

### 2. Angela and Jerry's Motions to Set Aside Default

Approximately two months after Prudential filed a motion for default judgment, on August 16, 2010, Angela filed a response to Prudential's motion for default judgment within which she requests the Court's assistance in resolving the dispute and asserts that Jimmy's children are the only parties entitled to the death benefits of the policy.[5] Several days later, on August 20, 2010, Jerry filed a motion to reopen default and vacate entry of default. In his personal affidavit attached to these motions, Jerry admits that he was served with the complaint. He contends, however, that he failed to file an answer because he mistakenly believed that Prudential was representing his interests in this action as a result of a conversation he had with a Prudential representative in February of 2010.

---

[5] Given the substance of Angela's filing and her *pro se* status, the Court shall construe Angela's response as a motion to set aside default. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)).

4

Bank Defendants filed a timely response in opposition to Jerry's motion. Bank Defendants argue, *inter alia*, that the setting aside of default would cause them undue prejudice and, in light of Jerry's failure to demonstrate the existence of a meritorious defense and the fact that he is personally responsible for his default, the Court should deny his motion. The same day Bank Defendants filed their response, they also filed a motion to strike Jerry's affidavit, which was filed in support of his motion to set aside default. Bank Defendants allege that the affidavit is self-serving, unsubstantiated, ambiguous, and otherwise lacks merit.

### 3. *October 27, 2010 Motions Hearing and Subsequent Filings*

On October 27, 2010, the Court held a hearing on all motions pending at that time. Bank Defendants' counsel, Joseph Neal, and Hannah attended, along with Jerry's legal counsel, Mr. Todd Boudreaux.[6] After the hearing, at which the parties presented argument with regard to Jerry's motion to set aside default, Bank Defendants filed two supplemental briefs in opposition to Jerry's motion. In addition, Bank Defendants filed a motion for default judgment against Angela and Jerry, as well as a second motion to disburse funds.

---

[6] Jerry did not attend and Angela neither attended the hearing nor was represented by counsel.

## II. DISCUSSION

### A. Motion to Set Aside Default

"The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). "The defendant bears the burden of establishing good cause to set aside an entry of default." Insituform Techs., Inc. v. AMerik Supplies, Inc., 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008). While the "good cause" standard varies depending upon the facts of a particular case, general guidelines are frequently applied. See Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana, 88 F.3d 948, 951 (11th Cir. 1996) ("We recognize that 'good cause' is not susceptible to a precise formula, but some general guidelines are commonly applied."). For instance, courts often consider the following factors in making a determination as to whether default should be set aside: (1) whether the defaulting party has a meritorious defense; (2) the promptness with which the defaulting party acts; (3) the reason for default; and (4) potential prejudice to the non-defaulting party. V.C. Rasmussen v. W.E. Hutton & Co., 68 F.R.D. 231, 233 (N.D. Ga. 1975). These factors, however, are not "talismanic," and courts have considered additional factors such as "whether the public interest was implicated" and "whether there was significant financial loss to the defaulting party." Compania, 88 F.3d at 951.

*1. Angela Crouch*

As stated above, after waiving service on January 25, 2010, the Court heard nothing from Angela until August 16, 2010, at which time she filed a "Response to Motion for Default," which, construed liberally, will be read as a motion to set aside the entry of default. (Doc. no. 34.) Her motion, in its entirety, reads as follows:

> Angela D. Crouch and siblings are the only person's [sic] entitled to receive the money from this policy as my father instructed it to be. SunTrust Bank has no legal rights to this money nor does the attorney Joe Neal who is over my Dad's estate. I appreciate any help you can give in this matter. Thank you for your time in reviewing this matter.

(Id.)

Based upon the foregoing, Angela has failed to show that there is "good cause" to set aside default. Angela's motion contains no explanation as to why she has yet to file an answer in this case nor why her motion was filed so long after default was entered. Having failed to carry her burden, to the extent Angela's "Response to Motion for Default" can be construed as a motion to set aside default, it is **DENIED**.

*2. Jerry Crouch*

Jerry acknowledges that he was served with the initial complaint and failed to file an answer, thereby warranting the entry of default. Jerry contends, however, that "good cause" exists for setting aside the entry of default in light of the

7

facts of his particular case.[7]  (Doc. nos. 35 & 36.)  The Court agrees.

### i. Promptness and Reason for Default

Prudential served Jerry with the complaint on January 6, 2010. According to Jerry's affidavit in support of his motion to set aside default, in February of 2010, Jerry spoke with a Prudential representative and was given the impression that Prudential would be representing his interests in the present action. (Doc. no. 35, Ex. 2 at 1.) As a result of this conversation and in light of the fact that he was not served with any subsequent pleadings in the case, Jerry asserts that he was unaware he needed to take any action in response to the Complaint[8] until he learned of Angela's response to Prudential's motion for default judgment. (Id. at 2.) Upon learning of the default proceedings, Jerry contends that he "immediately" contacted the law firm of Shepard, Plunkett, Hamilton & Boudreaux, and retained Mr. Boudreaux to file a motion to set aside default. (Id.)

While the Court finds that Jerry could certainly have acted more prudently in pursuing his claim to the death benefit, the

---

[7] The Court notes that Jerry, through his attorney, has consented to the dismissal of Prudential and expressly stated that he has no claim against Prudential.

[8] Jerry also states in his affidavit that he has been undergoing treatment at the Veterans Administration Hospital in Augusta, Georgia, for post-traumatic stress disorder, and between December 2009 and June 2010 he was admitted twice as an inpatient for severe depression. (Doc. no. 25, Ex. 2 at 2.) The Court also notes that Jerry's counsel stated at the motions hearing that Jerry was not in attendance because he was, at that time, an inpatient at a hospital.

8

Court cannot conclude—given Jerry's explanations—that his actions constitute the sort of culpable or willful behavior that generally warrants the denial of a motion to set aside default. See Am. Economy Ins. Co. v. Murphy, No. 5:07-cv-191, 2007 WL 3285808, at *2 (M.D. Ga. Nov. 6, 2007) ("To set aside an entry of default . . . a defendant need only show that the failure was not willful or culpable. In other words, under Rule 55(c) neglect need not be 'excusable,' as long as it is not willful.") Furthermore, Jerry's affidavit indicates that he acted promptly once he realized he was potentially in default by retaining the services of an attorney immediately upon notice of the entry of default. Thus, these factors weigh in favor of granting Jerry's motion to set aside default.

### ii. Meritorious Defense

When making a determination as to whether or not a defaulting party has properly asserted an affirmative defense to warrant the setting aside of an entry of default, "likelihood of success is not the measure." SunTrust Bank v. Armsey, No. 09-80606, 2010 WL 731802, at *2 (S.D. Fla. Feb. 26, 2010) (citation omitted). "Instead, the movant need only provide 'a hint of a suggestion' that his case has merit." Id. (quoting Moldwood Corp. v. A.B. Stutts, 410 F.2d 351, 352 (5th Cir. 1969)[9]); see

---

[9] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in Eleventh Circuit).

also Idearc Media LLC v. Kravitz Law Grp., No. 8:09-cv-02078, 2010 WL 2179122, at *4 (M.D. Fla. May 7, 2010) (same).

In opposition to SunTrust's claim for the death benefit, Jerry asserts, *inter alia*, that "SunTrust has failed to prove the existence of a valid assignment of the subject policy, any consideration in support of any assignment, or any outstanding obligation to be satisfied by the assignment." (Doc. no. 42.) Further, Jerry expressly states in his affidavit that, despite appearances, it is not Jerry's signature that appears on the assignment at issue in this case. (Doc. no. 35, Ex. 2 at 2.) Jerry's attorney argued at the motions hearing that this fact creates at least some question as to the validity of the assignment.[10]

Bank Defendants have spent considerable time and energy arguing that the purported assignment to SunTrust is both valid and controlling. Nevertheless, the Court is not considering a motion for summary judgment at this stage of the proceedings, but rather is considering whether to set aside an entry of default. In this context, the Court's review "is limited to an inquiry of whether Defendant's allegations are entirely devoid of merit." Armsey, 2010 WL 731802 at *2; see also Hartford Cas. Ins. Co. v. Jenkins, No. 09-0514, 2009 WL 4898319, at *2 (S.D.

---

[10] Jerry's attorney recognized that the authenticity of Jerry's signature may have little legal bearing on whether or not the assignment at issue is valid, but contended that, at the very least, the presence of a forged signature within a document raises a question as to the legitimacy of the entire document and/or the other signatures contained therein.

Ala. Dec. 14, 2009) (finding that where third-party defendant had denied substantive allegations in third-party complaint and pled two affirmative defenses, third-party defendant had shown meritorious defense that supported setting aside default); Am. Economy, 2007 WL 3285808 at *1 (finding that "questions as to the weight and credibility of the evidence" are not properly before a court on a motion to set aside default). Considering the present record, the Court admittedly has reservations as to the factual and legal basis of Jerry's claim to the death benefit; however, at this stage of the proceedings the Court is unable to find that Jerry has failed to assert a "meritorious defense." Accordingly, this factor weighs in favor of setting aside the entry of default.

### iii. Prejudice

Bank Defendants argue that they would be prejudiced by the setting aside of default because, prior to Jerry's motion to set aside, they entered into an agreement with Prudential within which they gave up all potential claims against Prudential in exchange for Prudential's agreement to pay its own attorneys' fees. Bank Defendants claim they relied on the absence of Jerry and Angela at that time in coming to that agreement.

The Court notes, however, that the "Consent Motion to Interplead" to which Bank Defendants refer was filed, and granted, prior to the entry of default against Angela or Jerry. Thus, in the Court's view, Bank Defendants' decision to give up

11

their claims was made at their own risk. Further, the Court finds that Jerry's failure to answer unlikely played a significant role in Bank Defendants' ultimate decision to give up their claims; Bank Defendants have failed to present any specific explanation as to how or why Jerry's absence affected their decision. In any event, even assuming some prejudice would result, the other factors, considered together, overwhelmingly favor setting aside default. The Court also notes that all other potential prejudice cited by Bank Defendants is based entirely on the delay that would result in having to adjudicate the case, but this is not sufficient prejudice under Rule 55.[11] See Armsey, 2010 WL 731802 at *2 ("Delay in adjudicating a plaintiff's claim does not qualify as sufficient prejudice under Rule 55. Instead, [a plaintiff] would have to show that the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties.")

### iv. Other Factors

While the Court fails to see how the public interest is implicated here, it is worth noting that Jerry could suffer a significant financial loss if default judgment is granted in this case. Jerry asserts that he is entitled to a one-third share of the over $134,000 sum now on deposit in the Court's

---

[11] Moreover, this case is still in its early stages, discovery has not begun, and there is no scheduling order in place.

registry. As such, the significant financial interest at stake also weighs in favor of setting aside default.

> *v. Conclusion*

Upon weighing the aforementioned factors and having taken into account that "defaults are seen with disfavor because of the strong policy of determining cases on their merits," <u>Fla. Physician's Ins. Co., Inc. v. Ehlers</u>, 8 F.3d 780, 783 (11th Cir. 1993), the Court finds that the entry of default as to Jerry Crouch should be set aside for good cause shown.

### B. Bank Defendants' Motions for Default Judgment

After the motions hearing, on November 1, 2010, Bank Defendants filed a motion for default judgment against both Angela and Jerry. (Doc. no. 49.) In light of the Court's decision to set aside the entry of default as to Jerry Crouch, Bank Defendants' motion for default judgment against him shall be **DENIED AS MOOT**. On the other hand, having determined that Angela Crouch's motion to set aside default shall be denied, the Court must now address whether default judgment should be entered against her.

At the motions hearing and in their recent "Motion for the Clerk to Enetr [sic] Default Judgment Orders," Bank Defendants request that the Clerk enter a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(1) based upon their contention that their claim is for a "sum certain or a sum that

13

can be made certain by computation." (Id. at 1.) As the Court stated at the hearing, "[t]he plain language of Rule 55(b)(1) clearly provides that a motion under that subsection must be made 'on the *plaintiff's* request.'" Hartford Life & Annuity Ins. Co. v. Bridges, No. 3:08-cv-10, 2008 WL 4394729, at *1 n.2 (M.D. Ga. Sept. 24, 2008) (citation omitted) (emphasis added). Thus, Bank *Defendants* are not entitled to a default judgment pursuant to 55(b)(1) and must proceed pursuant to Rule 55(b)(2).

Under Rule 55(b)(2), "[w]hile it is typically the plaintiff who moves for an entry of default judgment, the right of a defendant in an interpleader action to do so is recognized." Id. Nevertheless, the Court recognizes some inconsistencies that may result by entering default judgment against Angela while simultaneously allowing Jerry to pursue his claim that the assignment of the insurance policy, as a whole, is invalid. If the Court were to conclude that the assignment of the insurance policy was invalid and thereby find that Jerry is entitled to a one-third share of the death benefit, the Court would also likely find in favor of Angela, which would be inconsistent with a default judgment against her. Such a risk of "inconsistent adjudications" has been previously held as grounds for denying default judgment. See Kapadia v. Thompson, No. 06-cv-1359, 2008 WL 5225813, at *3 (D. Ariz. Dec. 15, 2008) ("Judgment should not be entered against one defendant until the matter has been adjudicated with regard to all defendants, if judgment would

produce 'logically inconsistent judgments in the same action.'" (citation omitted)); see also Gulf Coast Fans, Inc. v. Chan Kan Ping, 740 F.2d 1499, 1512 (11th Cir. 1984) ("Both Moore and Wright and Miller suggest that even when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits. . . . We believe this is sound policy."); In re First T.D. & Inv., Inc., 253 F.3d 520, 532 (9th Cir. 2008) (applying principles set forth in Gulf Coast). The Court finds the reasoning of these cases applicable here, and thus a judgment as to Angela Crouch shall be delayed until a decision is made on the merits of Jerry's claim in order to avoid "logically inconsistent judgments in the same action." Kapadia, 2008 WL 5225813 at *3.

### III. CONCLUSION

Based upon the foregoing, Defendant Jerry E. Crouch's motion to set aside default (doc. nos. 35 & 43) is **GRANTED** and the Clerk is hereby **DIRECTED** to **SET ASIDE** the Entry of Default as to Jerry E. Crouch (doc. no. 28). Bank Defendants' motion for default judgment (doc. no. 49) as to Jerry E. Crouch is thus **DENIED AS MOOT**. Further, Bank Defendants' motion for default judgment as to Angela D. Crouch (doc. no. 49) is also **DENIED**. In light of these decisions, the Court has no authority at this time to disburse to Bank Defendants the funds presently within

15

the registry of the Court. Accordingly, Bank Defendants' motion for an order to disburse funds (doc. nos. 29 & 50) is **DENIED**.[12]

In addition, for the reasons set forth at the hearing, both Bank Defendants' motion to strike Defendant Jerry E. Crouch's affidavit (doc. no. 40) and Prudential's motion for default judgment (doc. no. 33) are **DENIED**. And finally, upon sworn testimony from Hannah R. Crouch's legal representative, Joseph Neal, that Hannah has reached the age of majority, the Clerk is **DIRECTED** to **SUBSTITUTE** Hannah R. Crouch in the place of her mother, Susan Crouch, as a defendant in this action.

In light of the Court's decision to set aside default, this case shall proceed to discovery, and, if appropriate, to trial. Due to the limited issues remaining in this case, the following deadlines shall represent the scheduling deadlines in the above-styled case:

| | |
|---|---|
| **LAST DAY FOR FILING MOTIONS TO AMEND OR ADD PARTIES** | January 31, 2011 |
| **LAST DAY TO FURNISH EXPERT WITNESS REPORTS** | February 28, 2011 |
| **CLOSE OF DISCOVERY** | March 15, 2011 |
| **LAST DAY FOR FILING CIVIL MOTIONS EXCLUDING MOTIONS IN LIMINE** | April 15, 2011 |

Motions in limine shall be filed no later than FIVE (5) DAYS PRIOR TO THE PRE-TRIAL CONFERENCE.

---

[12] The Court further notes that Bank Defendants, on September 10, 2010, filed their own motion for entry of default as to Jerry E. Crouch and Angela D. Crouch. However, since default had already been entered against these individuals at the time of the motion's filing, this motion (doc. no. 41) is hereby **DENIED**.

16

All motions, other than summary judgment and motions to dismiss, shall be accompanied with a proposed order.

**ANY WITNESS KNOWN PRIOR TO THE CLOSE OF DISCOVERY AND NOT DISCLOSED WILL NOT BE ALLOWED.**

Curriculum vitae on all expert witnesses shall be filed separately with the pre-trial order. This rule will be strictly adhered to and the Court will not allow the expert witness to testify if this has not been complied with.

**ORDER ENTERED** at Augusta, Georgia, this 7th day of December, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA